UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VICKI JEAN MINTON,<br><br>    Plaintiff,<br> v.<br><br>CAROLYN COLVIN, Acting Commissioner,<br>Social Security Administration,<br><br>    Defendant. | Case No.: 5:12-CV-05303-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 17, 18, 19)** |

Plaintiff Vicki Jean Minton ("Minton") appeals the decision by Carolyn Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her supplemental security income disability benefits.[1] Minton moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers and considered the arguments of counsel, the court DENIES Minton's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

---

[1] The challenged decision was rendered by Administrative Law Judge Brenton Rogozen (the "ALJ") on October 13, 2010. The ALJ's decision became final on July 31, 2012, when the Appeals Council of the Social Security Administration denied Brollier's request for administrative review of the decision.

1

Case No.: 5:12-CV-05303-PSG
ORDER

## I. BACKGROUND

The following facts are taken from the decision by the ALJ and the accompanying administrative record ("AR"). Minton was born September 11, 1949.[2] She has a high school education,[3] and has worked as a hospital admissions clerk and health club manager.[4] She also worked as a massage therapist in the same health club.[5] Minton alleges multiple conditions limit her ability to work, including congestive heart failure, degenerative arthritis, bi-polar disorder, depression, diabetes, visual impairments, back and knee injuries, and lightheadedness.[6] She states that her disability began on March 13, 2004, but for unrelated reasons, she had not worked since 2002.[7] Minton sought emergency care on March 27, 2009 because she was having suicidal ideations,[8] and she first applied for supplemental security income benefits on September 14, 2009.[9]

### A. Hearing

The ALJ held a hearing on September 13, 2010.[10] At the hearing, Minton appeared with her counsel.[11] She testified about her work as a massage therapist and a health club manager prior to 2002 and about the impact of her bi-polar disorder on her daily activities and on her ability to work.[12]

---

[2] *See* AR at 119.

[3] *See id.* at 29.

[4] *See id.*

[5] *See id.* at 59.

[6] *See id.* at 134.

[7] *See id.*

[8] *See id.* at 366.

[9] *See id.* at 29.

[10] *See id.* at 29.

[11] *See id.*

[12] *See id.* at 50-60.

2

Case No.: 5:12-CV-05303-PSG
ORDER

1     Vocational Expert Thomas Linvill ("Linvill") testified that Minton's previous work
2 consisted of two full-time jobs. She worked as a massage therapist, which has medium strength
3 requirements, and she worked as a manager/owner, which requires only sedentary activity.[13] The
4 ALJ took the case under submission.

**B.     ALJ's Findings**

The ALJ issued his decision on October 13, 2010. For the first step of the disability analysis, the ALJ found Minton had not been engaged in substantial gainful employment since September 14, 2009.[14] At step two, he found that Minton's bilateral knee arthritis and left leg radiculopathy qualified as severe impairments under 20 C.F.R. § 416.920(c).[15] At step three, the ALJ found Minton's impairments did not meet or medically equal any of the listed impairments.[16] At step four, he found that Minton had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except being "limited to occasional pushing and pulling with the lower extremities."[17] Finally, at step five, the ALJ determined that the claimant was capable of performing past relevant work as a health club manager because, according to both the vocational expert's testimony and the dictionary of occupational titles ("DOT"), that job did not require work beyond sedentary exertion. Because he determined that Minton was capable of performing work as a manager, an occupation in her work history, the ALJ determined that Minton did not qualify for disability benefits.

---

[13] *See id.* at 61.

[14] *See id.* at 31.

[15] *See id.*

[16] *See id.* at 34.

[17] *See id.* at 35.

3

Case No.: 5:12-CV-05303-PSG
ORDER

## II. LEGAL STANDARDS

### A. Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Minton's benefits. The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[18] In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[19] When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[20] Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[21] "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."[22]

### B. Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process. In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[23] If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

---

[18] *See Moncada v. Chater,* 6 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[19] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[20] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).

[21] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

[22] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

[23] *See id.*

disabled" is made and the claim is denied.[24] If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is conclusively presumed and benefits are awarded.[25] If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[26] to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[27] The claimant has the burden of proving that he or she is unable to perform past relevant work.[28] If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[29] the determination of this issue comprises the fifth and final step in the sequential analysis.

### III.   DISCUSSION

Minton argues the ALJ erred in his ultimate finding that Minton was not "disabled" as defined by the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq*, and thus, was ineligible for disability benefits. She raises three specific challenges to the ALJ's decision: (1) the ALJ erred in finding that Minton was not disabled because she could perform one of her prior occupations but not the other; (2) the ALJ failed to include all of Minton's impairments in reaching his decision;

---

[24] *See id.*

[25] *See id.*

[26] A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[27] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[28] *See id.*

[29] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

5

Case No.: 5:12-CV-05303-PSG
ORDER

1  and (3) the reasons advanced by the ALJ for failing to credit Minton's testimony are not supported
2  by substantial evidence.[30]

3  The Commissioner responds that: (1) the ALJ properly found that Minton was not disabled
4  because she could perform one of her past occupations; (2) the ALJ's determination of Minton's
5  residual function accounted for all of her impairments, even those which were not severe; and (3)
6  substantial evidence supports the ALJ's credibility finding.[31]

### A. ALJ's Consideration of Minton's Work History

Minton first argues that the ALJ made an error of law in finding that she was not disabled because she could perform her past work as a health club manager.[32] She claims that this determination improperly classified the work by referring only to the "least strenuous portion" of the job, thereby running afoul of the Ninth Circuit's decisions in *Valencia v. Heckler*[33] and *Carmickle v. Astrue*.[34] In *Valencia* and *Carmickle,* the Ninth Circuit held that if a job encompasses more than one DOT code, "it is error for the ALJ to classify [it] 'according to the least demanding function.'"[35] However, in those cases, the ALJ based its determination on a single function in an overall more taxing job.

Here, the vocational expert expressly considered two separate occupations in Minton's history: a massage therapist and a health club manager.[36] Although Minton performed these two jobs at the same location, each constitutes its own separate occupation under the DOT, and the vocational expert treated them as such.[37] These facts are better likened to those presented in *De*

---

[30] *See* Docket No. 17.

[31] *See* Docket No. 18.

[32] *See* Docket No. 17. at 5.

[33] 751 F.2d 1082 (9th Cir. 1985).

[34] 533 F.3d 1155 (9th Cir. 2008).

[35] *Carmickle*, 533 F.3d at 1166 (citing *Valencia*, 751 F.2d at 1086).

[36] *See* AR 61-62.

[37] *See id.*

6

Case No.: 5:12-CV-05303-PSG
ORDER

*Rivera v. Astrue*.[38] In that case, the claimant has previously worked as a housekeeper, both in hotels ("light" work, in the DOT) and in homes ("medium" work).[39] The vocational expert treated these two occupations separately, as the DOT classifies them as independent occupations.[40] Based on this expert's testimony, the ALJ found that the claimant did not qualify for disability benefits because her RFC allowed her to pursue a position requiring only "light" work. Claimant appealed, arguing that this determination ran afoul of *Valencia*, but the court found no error because the vocational expert testified that the two jobs were entirely separate occupations, not just separate tasks in one job.[41] Similarly, in Minton's case, the vocational expert testified that her previous work was properly classified as two distinct occupations.[42] Therefore, the ALJ's determination that she is not disabled because she can pursue one of these occupations, while the other lies outside her RFC, is similarly outside *Valencia's* reach and does not constitute reversible error.

## B. ALJ's Consideration of Minton's Impairments

Minton next argues that the ALJ failed to consider all of her impairments. Specifically, Minton contends that in addition to the knee arthritis and left leg radiculopathy, she suffers from obesity, mental impairments, impaired cardiopulmonary functioning, and hypothyroidism, all of which should be deemed "severe" for purposes of the disability analysis.[43]

Although Minton's argument focuses on the fact that the ALJ failed to classify these impairments as severe for purposes of step two, the salient question is whether the ALJ considered the impairments for purposes of the RFC determination, because the step two determination is merely a threshold inquiry of whether claimants have any impairment that affect their ability to

---

[38] Case No. CV 10-2417-SH, 2010 WL 4916241.

[39] *See id.* at *4.

[40] *See id.* at *5.

[41] *See id.; cf. Person v. Astrue*, Case No. CV-10-02796-VBK, 2011 WL 488668 (C.D. Cal. Feb. 10, 2011).

[42] *See* AR 61-62.

[43] *See* Docket No. 17. at 7-9.

7
Case No.: 5:12-CV-05303-PSG
ORDER

1   work.[44]  "[T]he step two inquiry is a de minimis screening device to dispose of groundless

2   claims."[45]  If they do not, they are immediately categorized as "not disabled."[46] At step four and

3   five, the court further analyzes these impairments to determine the claimant's RFC and ability to

4   work.[47] If any impairment is found to be severe, the ALJ at step five must consider whether all

5   impairments, severe and non-severe, affect the claimant's ability to work.[48]

6   Here, the ALJ found that Minton suffered from two severe impairments, so the ALJ was

7   already required to take into consideration non-severe, medically determinable impairments when

8   determining the RFC.[49] The ALJ's decision expressly states that he considered the evidence

9   presented for and took into account the symptoms of each of the above listed conditions.[50]

10  Therefore, whether or not they were deemed "severe," the ALJ accounted for each alleged

11  condition in reaching his overall conclusion as to the claimants functional capacity, in conformance

12  with the law's requirements.[51]

13  Minton further asserts that the ALJ erred in failing to account for her mental impairments in

14  making his RFC determination.  However, the ALJ spent a full page discussing the evidence

15  regarding Minton's mental disabilities.[52]  He addressed the psychological reports and consultant

16  evaluations submitted with claimant's application, and gave specific reasons for crediting or not

17  crediting each piece of evidence.[53]   Although his decision did not specifically recount or rebut

---

[44] *See* 20 C.F.R. § 404.1520(a)(4).

[45] *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[46] *See id.* § 404.1520(c).

[47] *See* § 404.1520(e)-(f).

[48] *See Smolen*, 80 F.3d at 1290.

[49] *See id.*

[50] *See* AR 35-38

[51] *See Smolen*, 80 F.3d at 1290.

[52] *See* AR 37.

[53] *See id.*

8

Case No.: 5:12-CV-05303-PSG
ORDER

1   each piece of the record referencing Minton's mental ailments, such a detailed recitation is not
2   required to substantiate his decision. He considered the expert reports submitted and read them in
3   context of the other exhibits presented; nothing more is required when reviewing under this
4   standard.

### C. ALJ's Consideration of Minton's Testimony

Finally, Minton argues that the ALJ improperly rejected Minton's own testimony regarding her impairments. When assessing the subjective complaints of the claimant, the ALJ must make credibility findings, which must be sufficiently specific to make clear to the individual and any reviewers the weight the adjudicator gave to the claimant's statements and the reasons for that weight.[54] If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage "in second-guessing."[55] In making this finding, the ALJ may employ "ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."[56]

Minton's reply brief lists three reasons that the ALJ's credibility determination should be overturned. First, she alleges that the ALJ "den[ied] Ms. Minton's credibility based on her poverty," in violation of Ninth Circuit law.[57] This allegation appears to derive from the ALJ's findings that Minton failed to produce records showing regular contact with physicians and the lack of attempts to obtain relief by maintaining a regular medication regime.[58] There is substantial evidence in the record to support the argument that Minton has been in dire financial straits for many years,[59] such that her poverty may indeed be the reason for her sporadic medical care.

---

[54] *See* SSR 96-7p.

[55] *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (*citing Morgan v. Commissioner of Social Sec. Admin,* 169 F.3d 595, 600 (9th Cir. 1995)).

[56] *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

[57] *See* Docket No. 19 at 5.

[58] *See* AR at 37.

[59] *See, e.g.,* AR 52-62, 120, 342-43.

9

Case No.: 5:12-CV-05303-PSG
ORDER

However, these were but two of the eleven reasons given by the ALJ for not giving the claimant's testimony full weight. This alone, therefore, would not support a reversal.

      The ALJ's other reasons for discrediting Minton's testimony do not relate to her poverty and withstand scrutiny on other grounds. Minton takes issue with the ALJ's conclusions that her complaints are inconsistent and unsupported by the medical records. She points to one specific instance where the commissioner's brief finds fault with Minton's denial of heart disease, given that her disability application includes a complaint of congestive heart failure. However, as the ALJ points out, there is little in the medical record to substantiate Minton's claim of congestive heart failure.[60] Medical reports describe her heart as "almost normal," and her cardiopulmonary stress test did not reveal any significant cardiac problems.[61] Based on the evidence before him, the ALJ acted within his discretion in giving the claimant's testimony "little weight" in his assessment of her cardiopulmonary problems.[62] The ALJ also relied on the fact that the many physicians that Minton has seen for her complaints had failed to locate objective, medically identifiable issues that would generate her symptoms; instead, several doctors who prescribed treatment for Minton relied on her self-reports.[63] The record substantiates this finding.[64] Finally, the ALJ notes that he relied on the observations of administrative personnel who interacted with Minton throughout the course of her social security application, including his own observations when Minton came into court for a hearing.[65] These are all "ordinary techniques of credibility evaluation," such that the court finds no grounds for reversal.[66]

---

[60] *See* AR at 33-34.

[61] *See id.*

[62] *See id.*

[63] *See* AR 35-36.

[64] *See*, *e.g.*, AR 212-16, 289-291.

[65] *See* AR 35-36

[66] Minton acknowledges in her motion for summary judgment that despite his misgivings about her credibility, the ALJ assigned Minton a minimal RFC, such that any change in the credibility determination would be unlikely to sway the overall analysis. *See* Docket No. 17 at 10.

### IV. CONCLUSION

Minton's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 3, 2013

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge